FILED & ENTERED

NOV 06 2013

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY gonzalez DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>BO DUWAIN McCARTHY,<br><br>                    Debtor. | Case No. 2:12-bk-40506 ER<br><br>Chapter 7 |
| DR. CARL KING,<br><br>                    Plaintiff,<br>          v.<br><br>BO DUWAIN McCARTHY,<br><br>                    Defendant. | Adv. No. 2:12-ap-02542 ER<br><br>MEMORANDUM OF DECISION AFTER TRIAL<br><br>Date:  October 7, 2013<br>Time:  9:00 a.m.<br>Place: Courtroom 1568 |

On October 7, 2013, the Court conducted a trial in this adversary proceeding.  Appearances were as set forth on the record.  For the reasons set forth fully below, the Court awards judgment in favor of Debtor.

**I**
**FACTUAL BACKGROUND**

Plaintiff is a clinical psychologist and a contract employee with Valley College.  Plaintiff's spouse is a Deputy

Attorney General for the State of California.  Plaintiff and his spouse retained Debtor to assist in the building of a house.[1]  Plaintiff's spouse testified at trial that when she and Plaintiff fell behind in payments to Debtor, they executed a promissory note ("Note") in favor of Debtor.  Although no party testified regarding the date of the execution of the Note, and no copy of the Note was identified, it appears that the Note was executed in 2003.  Plaintiff's Trial Brief at 2.  Both Plaintiff and his spouse testified that the Note was payable upon the issuance of a certificate of occupancy.  Such a certificate was necessary in order to obtain a loan to pay off the Note.

   On January 13, 2011, Plaintiff and his spouse met with Debtor and his spouse at a Denny's restaurant upon Debtor's request.  Plaintiff and his spouse testified that after approximately twenty-five minutes of pleasantries:

- Debtor showed them a copy of a receipt indicating that Debtor had pawned certain jewelry, which he wanted to retrieve;

- Debtor stated that he knew that Plaintiff and his spouse had the money to pay him, and Debtor demanded a $6,000 payment;

- Debtor showed them a document which included a copy of a check from Plaintiff to Debtor in the amount of $500 dated November 23, 2010, and which had the handwritten notations:

---

[1] The Court notes that the record is sparse as to exact dates of certain underlying events, such as when Debtor was first retained by Plaintiff and his spouse, and when Plaintiff (and presumably his spouse) executed a promissory note.

-2-

>    balance $19,000.00, and a figure for an average daily balance;
>
> - Debtor further stated that he had a contact at Plaintiff's bank, JPMorgan Chase Bank ("Chase"), and knew Plaintiff had a fourteen year relationship with Chase and had the ability to obtain a loan to pay Debtor;
>
> - Debtor further stated that he had connections in the media through which he could obtain media coverage that Plaintiff and his spouse were rich, but were not paying him; and
>
> - Debtor finally stated that if he was not paid, he would picket Plaintiff's home, Valley College and the State Attorney General's Office with messages that Plaintiff and his spouse were dishonest liars and were rich but would not pay him.

Both Plaintiff and his spouse further testified that they saw the document which had the copy of the check and the balance information, but that Debtor kept this document and did not produce it in discovery.  Neither Plaintiff nor his spouse have seen this document since the meeting at Denny's. In addition, they testified that Debtor's demeanor was hostile and outside the bounds of professionalism.  After the meeting, Plaintiff and his spouse waited in the parking lot for Debtor and his spouse to leave, because Plaintiff's spouse did not want Debtor to see that she was going to pick up their children.

Following the meeting at Denny's, Plaintiff went online to confirm the balance figures which Debtor showed him.  Plaintiff checked the balance information for the period from the date of the check and several days thereafter, and found that the

balance amount which Debtor showed them was "pretty close" to those online.

Plaintiff also contacted Chase and learned that a branch manager, Lori Marchalk ("Marchalk"), had accessed his account, but that she was no longer with the bank.  Plaintiff was not told, however, that Marchalk accessed his account on her last day with the bank.  Marilyn Harris, an employee of and custodian of records for Chase, testified at trial that Chase's records show that Marchalk accessed Plaintiff's account on November 30, 2010.  See Plaintiff's Exhibits 6 and 7.  Blair Feivou, a District Manager for Chase, testified at trial that pursuant to Chase's privacy policy, customers and non-customers of Chase cannot access an average daily balance without the account holder's authorization.

Subsequent to the meeting at Denny's, Debtor sent Plaintiff emails to which Plaintiff responded.  The emails from Debtor continued to refer to media disclosure, picketing and Plaintiff's banking relationship and information, and also continued to ask for money.  Plaintiff's Exhibits 2 and 3. Plaintiff eventually paid Debtor $3,000.00, even though Plaintiff believed that the event triggering payment of the Note (i.e., the issuance of a certificate of occupancy) had not yet occurred.

Plaintiff testified that he felt threatened by Debtor's statements made at the meeting at Denny's and in the subsequent emails. Plaintiff contacted an attorney through his employee assistance program, and stated that he was constantly anxious. In addition, Plaintiff's employment contract with Valley College was "coming up" presumably for renewal. He had difficulty sleeping, bad dreams, a hard time concentrating, an upset stomach and was grinding his teeth. However, Plaintiff further testified that he did not seek any treatment for the foregoing, which subsided after a couple of months.

**II
DISCUSSION**

Plaintiff seeks a nondischargeability judgment pursuant to 11 U.S.C. § 523(a)(6) based on claims against Debtor for invasion of privacy and civil extortion. Prior to deciding the nondischargeability issue, the Court must first determine the validity of Plaintiff's privacy and extortion claims against Debtor and his damages, if any. See, Gill Distribution Centers, Inc. v. Banks (In re Banks), 225 B.R. 738, 745(Bankr. C.D.Cal. 1998)(In determining the dischargeability of a debt, a court must consider two distinct issues: (1) the establishment of the debt itself, and (2) the nondischargeable nature of such debt.).

//

//

//

**A. Plaintiff has not established a claim for invasion of privacy.**

In order to prevail in an invasion of privacy action based on intrusion into private matters, a plaintiff must prove:

> (1) intrusion into a private place, conversation or matter, (2) in a manner highly offensive to a reasonable person. 'To prove actionable intrusion, the plaintiff must show the defendant penetrated some zone of physical or sensory privacy surrounding, *or obtained unwanted access to data about*, the plaintiff. The tort is proven only if the plaintiff had an objectively reasonable expectation of seclusion or solitude in the place, conversation or data source.'

Folgelstrom v. Lamps Plus, Inc., 195 Cal.App.4th 986, 992 (2011) (citations omitted)

In the instant case, Plaintiff alleges that Debtor invaded his privacy when Debtor allegedly obtained information regarding the balance and average daily balance in Plaintiff's bank account with Chase.  However, the following is the only evidence submitted by Plaintiff in support of this claim:

- Plaintiff and his spouse's testimony that Debtor showed them a paper which purportedly had written figures representing the balance and average daily balance of one of Plaintiff's bank accounts at Chase;

- Plaintiff's testimony that after the meeting at Denny's, he checked the account balance online around the date of the copy of the check (November 23, 2010), which was also on the paper containing the balance amounts, to several days after, and confirmed that the balance amount on the paper was "pretty close" to the actual balance amount;

- Plaintiff and his spouse's testimony that Debtor told them at the meeting at Denny's that Debtor had a contact at Chase who gave Debtor the account information, and told Debtor that Plaintiff could get a loan to repay Debtor based on Plaintiff's long term relationship with Chase;

- Debtor's deemed admissions that at the meeting at Denny's, he told Plaintiff the following: that Plaintiff had sufficient funds in his account to pay Debtor, that one of the figures on the paper represented Plaintiff's bank account balance when Debtor accessed the information, that the other figure represented the average daily balance, and that Debtor knew someone at Chase who gave him the account information.

- Testimony of a Chase representative (Marilyn Harris) that an investigation disclosed that Marchalk, a Chase branch manager, had accessed Plaintiff's account on November 30, 2010, which was also Marchalk's last day with Chase.

The foregoing only indicates that Plaintiff claims that Debtor showed him and his spouse a paper, which was not produced at trial and which neither Plaintiff nor his wife has seen since the meeting with Debtor on January 13, 2011. This paper allegedly had figures for the balance and average daily balance of Plaintiff's account at Chase, which Plaintiff testified that he did not write down. Notwithstanding, Plaintiff testified that he remembered these alleged balance amounts, confirmed them online and found that they were "pretty close" to the balances for the period from date of the check (November 23, 2010) to several days later. It is unclear, however, how Plaintiff knew to check the balance information for the period stated, especially since there is no evidence of the dates of the balance figures allegedly on the paper.

In addition, the Chase representative testified that a branch manager, Marchalk, accessed Plaintiff's account on November 30,

2010, which was her last day with Chase.  However, Plaintiff did not prove any connection between Debtor and Marchalk.  Moreover, Debtor's deemed admissions establish only that Debtor *told* Plaintiff that the figures on the paper represented the balance and average daily balance of his bank account, and that Debtor knew some unidentified person at Chase who gave him this information.

The foregoing does not establish that Debtor actually gained access to Plaintiff's bank account, and thereby intruded into Plaintiff's privacy.  There is no evidence that Debtor contacted an identified Chase representative, who gave him access to Plaintiff's account and/or balance information for a specified period.  At best, the record only indicates that Debtor *may* have had Plaintiff's balance information,[2] but it does not establish how Debtor *may* have obtained such information and/or that Debtor invaded Plaintiff's privacy.  Consequently, the Court finds that Plaintiff has not established an invasion of privacy claim.

**B. Plaintiff has not established a claim for civil extortion.**

Courts have acknowledged that "California has recognized a civil cause of action for the recovery of money obtained by the wrongful threat of criminal or civil prosecution, whether the

---

[2] The Court, however, makes no such finding.

claim is denominated as 'extortion, menace or duress.'" Monex Deposit Co. v. Gilliam, 666 F.Supp.2d 1135, 1136 (C.D.Cal. 2006); TaiMed Biologics v. Numoda Corp., 2011 WL 1630041 *5 (N.D.Cal. 2011); Padgett v. City of Monte Sereno, 2007 WL 7758396 *19 (N.D.Cal.).  In the instant case, there are no allegations and/or evidence that Debtor threatened Plaintiff with civil or criminal prosecution.  Rather, Plaintiff claims that Debtor threatened to picket his home and his and his spouse's respective workplaces, and to obtain media coverage of Plaintiff's non-payment of the amounts due Debtor.

The court in Padgett found no extortion where there was no threat of civil or criminal prosecution, even though there was a threat of disclosure of criminal history.  The court noted that the plaintiffs therein had been criminally prosecuted *prior* to the threat. Id.  Moreover, the Supreme Court of California has emphasized that not all "rude, aggressive, or even belligerent prelitigation negotiations, . . . that may include threats to . . . publicize allegations of wrongdoing, necessarily constitute extortion."  Flatley v. Mauro, 39 Cal.4th 299, 332 (2006). Consequently, because the Plaintiff has not established that Debtor threatened him with prosecution of any kind, the Court finds that Plaintiff has no claim based on Debtor's alleged civil extortion under California law.

Since Plaintiff has not established a claim against Debtor based on an invasion of privacy or civil extortion, it is not necessary for this Court to determine the issue of nondischargeability pursuant to 11 U.S.C. § 523(a)(6).

### III
### CONCLUSION

Based on the foregoing, the Court awards judgment in favor of Debtor in this adversary proceeding. The Court shall prepare a judgment consistent with this Memorandum of Decision.

###

Date: November 6, 2013

Ernest M. Robles
United States Bankruptcy Judge

**NOTICE OF ENTERED ORDER AND SERVICE LIST**

Notice is given by the court that a judgment or order entitled (*specify*) `MEMORANDUM OF DECISION AFTER TRIAL as` entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner indicated below:

**I. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)** Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of November 6, 2013 the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below.

Richard G Flanagan    flanhint@socal.rr.com

Alison R Kalinski    akalinski@pldlawyers.com

Sam S Leslie (TR)    sleslie@trusteeleslie.com, sleslie@ecf.epiqsystems.com;trustee@trusteeleslie.com

United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**II. SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by U.S. Mail to the following person(s) and/or entity(ies) at the address(es) indicated below:
Bo Duwain McCarthy
909 W. Suffolk Ave.
Montebello, CA 91016

☐ Service information continued on attached page

**III. TO BE SERVED BY THE LODGING PARTY**: Within 72 hours after receipt of a copy of this judgment or order which bears an AEntered@ stamp, the party lodging the judgment or order will serve a complete copy bearing an AEntered@ stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s) and/or email address(es) indicated below:

☐ Service information continued on attached page